Filed 3/18/21  P. v. Escamilla CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JULIAN JACOB ESCAMILLA,<br><br>    Defendant and Appellant. | F077568<br><br>(Super. Ct. No. BF168296A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

David Y. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING OPINION**

## INTRODUCTION

Defendant Julian Jacob Escamilla sexually assaulted a 12-year-old girl he encountered at a park. He was charged with and convicted by jury of committing a lewd or lascivious act upon a child under 14 years of age (Pen. Code, § 288, subd. (a); count 1),[1] oral copulation of a child under 14 years of age (former § 288a, subd. (c)(2)(B); count 2), and sexual penetration of a child under 14 years of age by means of force, violence, duress, menace, or fear (§ 289, subd. (a)(1)(B); count 3).[2] The jury found the special allegations of simple kidnapping and aggravated kidnapping, attached to all three counts, true. (§ 667.61, subds. (d)(2), (e)(1).)[3]

Under section 667.61, known as the "One Strike" law, the trial court sentenced defendant to a mandatory term of life without the possibility of parole (LWOP) on count 2 and a concurrent mandatory LWOP term on count 3. (*Id.*, subd. (j)(1).) On count 1, the court imposed a mandatory term of 25 years to life in prison, stayed under section 654. (§ 667.61, subd. (j)(2).)

Defendant was 21 years old when he committed the crimes in this case. On appeal, he claims that section 3051, subdivision (h), which categorically excludes persons sentenced under the One Strike law from youth offender parole hearing eligibility, violates the equal protection clauses of the federal and state Constitutions. He also

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] Section 288 was amended, effective January 1, 2019, but the changes are not relevant to the conviction in this case. (Stats. 2018, ch. 70, § 2, pp. 2–4) Additionally, also effective January 1, 2019, section 288a was renumbered to section 287 and section 667.61, discussed *post*, was amended to reflect this renumbering. (Stats. 2018, ch. 423, § 49, pp. 88–91, § 68, pp. 127–130.) Relevant to count 2, former section 288a, subdivision (c)(2)(B), is now section 287, subdivision (c)(2)(B).

[3] Subdivision (e)(1) of section 667.61, simple kidnapping, applies where "the defendant kidnapped the victim of the present offense in violation of Section 207, 209, or 209.5," and subdivision (d)(2) of section 667.61, aggravated kidnapping, applies where "[t]he defendant kidnapped the victim … and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense .…"

2.

claims that he is entitled to reversal of the simple kidnapping finding under section 667.61, subdivision (e)(1), because it is lesser and included within the greater finding of aggravated kidnapping under section 667.61, subdivision (d)(2); and that given his LWOP sentence, the trial court improperly imposed a parole revocation restitution fine under section 1202.45, subdivision (a).

The People concede the parole revocation restitution fine must be vacated, but they otherwise dispute defendant's entitlement to any relief.

We agree with the parties that the trial court erred in imposing a parole revocation restitution fine under section 1202.45, subdivision (a), but we reject defendant's argument requesting relief from the jury's simple kidnapping finding. We also reject his equal protection challenge to the exclusion of young adult One Strike offenders from youth offender parole hearing eligibility under section 3051, subdivision (h). We acknowledge the harsh consequences of the One Strike law, the trend regarding treatment of juveniles and young adult offenders under the law, and the difficulties presented by this question. However, "[t]o mount a successful rational basis challenge, a party must '"negative every conceivable basis"' that might support the disputed statutory disparity" (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881 (*Johnson*)), and given this deferential standard of review, we are unable to conclude that there is no rational basis underlying the exclusion of young adult One Strike offenders from youth offender parole hearings under section 3051, subdivision (h). As explained below, reconciliation of the existing tensions in the law falls within the purview of the legislative branch. Therefore, we vacate the parole revocation restitution fine, but otherwise affirm the judgment.

### FACTUAL SUMMARY

One night in May 2017 around 9:00 or 9:30 p.m., Ashley C., 12 years old, snuck out of her house and went to a park with her 13-year-old friend. After the two girls argued, Ashley's friend went home and Ashley sat down along the railroad tracks by the park. A stranger, later identified as defendant, approached and sat down next to Ashley.

3.

He began asking her questions. They talked for a bit, and Ashley told him her name and that she was 12 years old. Defendant said he was 17 years old, asked her why she was alone and commented that no one should be alone in the world.

Defendant scooted closer to Ashley and she moved away. He then put his arm around her neck. She moved away, said she had to leave and stood up. Defendant grabbed her wrist, scaring her. She felt she could not get away from him and sat back down. They talked further and he leaned in to kiss her, at one point putting his tongue in her mouth. Defendant's breath smelled of alcohol and Ashley told police he was drunk. She pushed him, stood up and moved a few feet away, but he grabbed her with both hands. She was scared and could not get away. When she told him to let her go because she wanted to leave, he raised his hand as if he was going to strike her and she was frightened he was going to hurt her.

Ashley told him again to let her go, but he began pulling her toward what she described as "a little fort-looking thing." A detective explained the area, which was approximately 80 feet from the tracks where defendant and Ashley had been sitting, was a hollow in the brush created by tree branches that grew up from a stump and bent back to the ground, creating a secluded dome-like space. There was a blanket on the ground inside the hollow, another blanket hanging on the brush, a shopping cart, and trash in the area.

Ashley pulled back in resistance, but defendant was stronger. He pulled her into the brush hollow, pushed her down on the blanket and got on top of her. She struggled and yelled for help when she saw a bicyclist riding by. The bicyclist stopped and defendant covered Ashley's mouth with his hand. She bit defendant's hand and he removed it but, when she looked again, the bicyclist was gone.

Defendant unbuckled Ashley's pants and pulled them down, along with the shorts and underwear she was wearing underneath. After asking Ashley if she had a condom, defendant inserted his finger in her vagina and moved it around. She felt burning pain

4.

and told him to stop. Defendant then licked her vagina. At some point, defendant stopped, got off of her and said, "'Do me.'" As defendant was lying on the ground on his back, Ashley pulled her pants up and ran, leaving behind her wallet and cell phone, which had fallen from her pockets to the ground.

Defendant followed Ashley out of the hollow, but headed in the opposite direction. Ashley ran up to a man in the park and asked him to call 911. He just stared at her in response, so she ran to her friend's nearby house for help. Someone at the house called 911 and Ashley was taken to the hospital by ambulance, still extremely upset and sobbing.

Ashley underwent a Sexual Abuse Response Team (SART) examination, which included swabs for DNA and a blood draw. The examining nurse observed a laceration to Ashley's vagina caused by blunt force trauma, as well as soil and vegetation debris on her buttocks. Defendant was located at his home near the park at approximately 4:00 a.m. and he also underwent a SART examination.[4] A swab for DNA taken from Ashley's vagina was consistent with defendant's profile, and a swab for DNA taken from defendant's hand was consistent with Ashley's profile.

## DISCUSSION

### I. Equal Protection Challenge to Exclusion from Eligibility for Youth Offender Parole Hearing

#### A. Background

Prior to committing the offenses in this case, defendant's criminal record was limited to two misdemeanor convictions from 2016: driving under the influence of alcohol and public intoxication. (Veh. Code, § 23152, subd. (a); Pen. Code, § 647, subd. (f).) Based on defendant's commission of specified sex crimes against a victim under the age of 14 years and the jury's special circumstance findings of simple

---

[4] A detective who contacted defendant testified that he did not see any signs defendant was under the influence of drugs or alcohol.

kidnapping and aggravated kidnapping, however, he was sentenced under the One Strike law to mandatory terms of 25 years to life on count 1 and LWOP on counts 2 and 3. (§ 667.61, subd. (j)(1), (2).)

Relevant to defendant's claim on appeal, section 3051 was added to the Penal Code effective January 1, 2014. As originally enacted, the statute provided for youth offender parole hearings for those who committed their controlling offenses before 18 years of age. (Stats. 2013, ch. 312, § 4, pp. 5–7.) In enacting section 3051 and related changes to the Penal Code, the Legislature found and declared:

> "[A]s stated by the United States Supreme Court in *Miller v. Alabama* (2012) [567 U.S. 460], 'only a relatively small proportion of adolescents' who engage in illegal activity 'develop entrenched patterns of problem behavior,' and that 'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds,' including 'parts of the brain involved in behavior control.' The Legislature recognizes that youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society. The purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in *People v. Caballero* (2012) 55 Cal.4th 262 and the decisions of the United States Supreme Court in *Graham v. Florida* (2010) 560 U.S. 48, and *Miller v. Alabama* ….. Nothing in this act is intended to undermine the California Supreme Court's holdings in *In re Shaputis* (2011) 53 Cal.4th 192, *In re Lawrence* (2008) 44 Cal.4th 1181, and subsequent cases. It is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established." (Stats. 2013, ch. 312, § 1, pp. 2–3, italics added.)

Under the statute, offenders sentenced under the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) or the One Strike law, or to LWOP, and those "who, subsequent to attaining 18 years of age, commit[] an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is

6.

sentenced to life in prison" were categorically excluded from youth offender parole hearing eligibility. (Stats. 2013, § 4, p. 5.) Section 3051 was subsequently extended to those who committed their controlling offenses when they were under 23 years of age (Stats. 2015, ch. 471, § 1, pp. 1–3), and later to those who committed their controlling offenses when they were 25 years of age or younger (Stats. 2017, ch. 675, § 1, pp. 1–3). The categorial exclusions in subdivision (h) remained, but as to juveniles, section 3051 was amended effective January 1, 2018, to add subdivision (b)(4), which provided, "A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is life without the possibility of parole shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions." (Stats. 2017, ch. 684, § 1, p. 2.)[5]

Defendant advances a facial challenge to subdivision (h) of section 3051 under the equal protection clauses of the state and federal Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).)[6] He claims that young adult offenders such as himself sentenced under the One Strike law are similarly situated to first degree murderers who are statutorily eligible for youth offender parole hearings and that there is no rational basis underlying the disparity in treatment. Defendant urges us to follow

---

[5] Section 3051, subdivision (b)(4), presently provides: "A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is life without the possibility of parole shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration. The youth parole eligible date for a person eligible for a youth offender parole hearing under this paragraph shall be the first day of the person's 25th year of incarceration." (See Stats. 2019, ch. 577, § 2, p. 3.)

[6] In the absence of a contrary argument, "we address [the defendant's] state and federal claims together." (*In re C.B.* (2018) 6 Cal.5th 118, 133, fn. 11, citing *Johnson*, *supra*, 60 Cal.4th at p. 881; accord, *People v. Chatman* (2018) 4 Cal.5th 277, 287–288 (*Chatman*).)

7.

*People v. Edwards* (2019) 34 Cal.App.5th 183, 199 (*Edwards*) and find that the categorical exclusion of One Strike youth offenders from youth offender parole hearing eligibility violates equal protection.

The People argue that the two groups are not similarly situated and there are rational bases for excluding One Strike offenders from eligibility for youth offender parole hearings under section 3051. For the reasons set forth below, we conclude that defendant has not met his burden on appeal. As to young adult offenders such as defendant, even if we assume that eligible first degree murderers and One Strike offenders are similarly situated for the purpose of youth offender parole hearings, legislative concern over recidivism in sex offenders provides a rational basis for distinguishing the two groups of offenders, which forecloses defendant's equal protection claim. (*Johnson*, *supra*, 60 Cal.4th at p. 881.)

**B.     Legal Standard**

"At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification." (*Chatman*, *supra*, 4 Cal.5th at p. 288.) "Where … a disputed statutory disparity implicates no suspect class or fundamental right, 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose."' [Citations.] 'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in "'rational speculation'" as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record."' [Citation.] To mount a successful rational basis challenge, a party must '"negative every conceivable basis"' that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, courts may not second-guess its

8.

'"wisdom, fairness, or logic.""" (*Johnson*, *supra*, 60 Cal.4th at p. 881; accord, *Chatman*, at pp. 288–289.)

"'[W]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.' [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends"' [citations], or 'because it may be "to some extent both underinclusive and overinclusive"' [citations]." (*Johnso*n, *supra*, 60 Cal.4th at p. 887.) "At bottom, the Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses." (*Ibid.*; accord, *Chatman*, *supra*, 4 Cal.5th at pp. 288–289.)

## C.     Analysis

### 1.     Summary of Appellate Court Decisions

#### a.     One Strike Offenders

The issue before us was considered by the Courts of Appeal in *Edwards*, *supra*, 34 Cal.App.5th 183, and, postbriefing, *People v. Williams* (2020) 47 Cal.App.5th 475, review granted July 22, 2020, S262229 (*Williams*) and *People v. Moseley* (2021) 59 Cal.App.5th 1160 (*Moseley*).[7]  In *Edwards*, the defendants were 19 years old when they committed their controlling offenses and, as here, they were excluded from relief under section 3051, subdivision (h), because they were sentenced under the One Strike law.

---

[7]     We note that in *People v. Bell* (2016) 3 Cal.App.5th 865, review granted January 11, 2017, S238339, the Court of Appeal considered an equal protection challenge to the exclusion of One Strike offenders from section 3051, and *Bell* is addressed in *Edwards*, *Williams* and *Moseley*.  However, after issuing its decision in *People v. Contreras* (2018) 4 Cal.5th 349 (*Contreras*), the California Supreme Court transferred *Bell* back to the appellate court on June 13, 2018, with directions to vacate the opinion and reconsider the matter in light of *Contreras*.  The Court of Appeal subsequently resolved the appeal in *Bell* in a nonpublished opinion. (*People v. Bell* (Aug. 2, 2018, B263022) [nonpub. opn.].)  "An appellate opinion which has been subsequently reversed by a court of superior jurisdiction, or vacated by the court which rendered it[,] is ordinarily of no precedential value and is not to be cited as controlling authority for any purpose." (*Occidental Life Ins. Co. v. State Bd. of Equalization* (1982) 135 Cal.App.3d 845, 848, fn. 1.)  For this reason, we do not address *Bell* further in this opinion.

(*Edwards*, *supra*, 34 Cal.App.5th at p. 186.) The First District, Division Four, rejected the People's contrary argument and concluded that "One Strike rapists and first degree murderers, both aged 25 years or younger, are two groups of violent youthful offenders who seek the opportunity to demonstrate after extended terms of imprisonment that they should rejoin society" and "are, for purposes of section 3051, ""'similarly situated.""" (*Id.* at p. 195.)

Relying on dicta from the California Supreme Court's decision in *Contreras*, *supra*, 4 Cal.5th 349, coupled with the distinction between murder and other crimes drawn by the United States Supreme Court in several cases, the appellate court also concluded that "section 3051's carve-out for One Strike defendants violates principles of equal protection" because there is no "rational relationship between the disparity of treatment and a legitimate governmental purpose." (*Edwards*, *supra*, 34 Cal.App.5th at p. 197.)[8] The court rejected the People's argument "that the Legislature 'clearly made a rational, moral judgment that the public should be protected from violent sex offenders, and that violent sex offenders should be incarcerated for longer periods of time,'" finding it "vague and circular." (*Edwards*, *supra*, at p. 198.) The court was also unpersuaded by the People's recidivism argument because "murderers, too, recidivate," and the People failed to cite to "evidence that violent rapists recidivate more than other felons." (*Id.* at p. 199.) Although the court acknowledged that "the law requires no empirical support for the hypothesized concern about recidivism," it stated that "'the realities of the subject matter cannot be completely ignored .…'" (*Ibid.*)

---

[8] *Edwards* cited *Miller v. Alabama* (2012) 567 U.S. 460, 479 (*Miller*) (mandatory LWOP sentence for juveniles violates 8th Amend.), *Graham v. Florida* (2010) 560 U.S. 48, 74–75 (8th Amend. forbids LWOP sentence for nonhomicide offenses), *Kennedy v. Louisiana* (2008) 554 U.S. 407, 446 (8th Amend. forbids death penalty for child rape), and *Coker v. Georgia* (1977) 433 U.S. 584, 597 (8th Amend. forbids death penalty for rape of adult woman). (*Edwards*, *supra*, 34 Cal.App.5th at pp. 196–197.)

In *Williams*, another One Strike sentencing case involving a young adult offender, the Fourth District, Division One, disagreed with *Edwards*. The court assumed for the sake of argument that the One Strike offenders and murderers are similarly situated for the purpose of challenging section 3051, subdivision (h) (*Williams*, *supra*, 47 Cal.App.5th at p. 489, review granted), but concluded that excluding young adult offenders sentenced under the One Strike law from youth offender parole hearings under section 3051 does not violate equal protection because "the threat of recidivism by violent sexual offenders—as demonstrated by the Legislature's enactment of several comprehensive statutory schemes to curb such recidivism among such offenders— provides a rational basis for the Legislature's decision to exclude one strikers from the reach of section 3051" (*Williams*, *supra*, at p. 493, review granted). The court found *Edwards*'s reliance on *Contreras* misplaced because *Contreras* concerned a challenge to juvenile LWOP sentences on Eighth Amendment grounds. (*Williams*, *supra*, at pp. 492– 493, review granted.)

Most recently, in *Moseley*, which concerned a juvenile offender sentenced under the One Strike law, the Second District, Division Two, disagreed with *Edwards* and followed *Williams*, with one justice dissenting. (*Moseley*, *supra*, 59 Cal.App.5th at pp. 1168–1171.) The majority concluded that youthful murderers and youthful sex offenders are not similarly situated, and the risk of recidivism underlying the Legislature's distinction between the two groups is rational. (*Id.* at p. 1170.)

*Moseley* was not persuaded by the *Edwards* court's conclusion that youthful One Strike offenders and youthful murderers eligible for relief under section 3051 are similarly situated because they "are 'both aged 25 years or younger [and] are two groups of violent youthful offenders who seek the opportunity to demonstrate after extended terms of imprisonment that they should rejoin society.'" (*Moseley*, *supra*, 59 Cal.App.5th at p. 1169, quoting *Edwards*, *supra*, 34 Cal.App.5th at p. 195.) In reaching a contrary result, *Moseley* opined, "[T]here is no established precedent that supports this

11.

conclusion. If a common interest in rejoining society after an extended imprisonment were the proper standard, nearly every inmate would be similarly situated for any statute with an ameliorative effect on an inmate's sentence." (*Ibid.*) Further, *Moseley* concluded that "offenders who commit different crimes are not similarly situated." (*Ibid.*, citing *People v. Macias* (1982) 137 Cal.App.3d 465, 472–473.)

In analyzing whether a rational basis for the exclusion of juvenile One Strike offenders exists, *Moseley* observed that "there are significant public safety concerns that support the exclusion of these sex offenders from youth offender parole consideration, including recidivism," and the "Legislature has long expressed special concern for recidivism among sex offenders." (*Moseley*, *supra*, 59 Cal.App.5th at p. 1170.) Given the deferential standard of review, the majority found that concerns over the risk of recidivism provide a rational basis for the exclusion of One Strike offenders pursuant to section 3051, subdivision (h). (*Moseley*, *supra*, at p. 1170.)

### b. Three Strikes Offenders

In the context of a young adult offender sentenced under the Three Strikes law, the First District, Division Five, distinguished that district's earlier decision in *Edwards* and held that section 3051, subdivision (h), does not violate the equal protection clause. (*People v. Wilkes* (2020) 46 Cal.App.5th 1159, 1167.) Assuming youthful offenders sentenced under the Three Strikes law are similarly situated to other youthful offenders, the court concluded "the Legislature could rationally determine that the former—'a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system' [citation]—presents too great a risk of recidivism to allow the possibility of early parole." (*Id.* at p. 1166.) "'The "One Strike" law is an alternative, harsher sentencing scheme that applies to specified felony sex offenses,' such that '"a first-time offense can result in one of two heightened sentences."' [Citation.] The distinguishing characteristic of Three Strikes offenders, of course, is that they are not being sentenced for a first-time offense. Thus, the ample

authority rejecting equal protection challenges from Three Strikes offenders did not apply in *Edwards*." (*Id.* at pp. 1166–1167.)

### c. LWOP Sentences

Finally, Courts of Appeal have rejected equal protection challenges to section 3051, subdivision (h), by young adult offenders serving LWOP sentences for special circumstance murder. (*In re Williams* (2020) 57 Cal.App.5th 427, 430; *People v. Acosta* (2021) 60 Cal.App.5th 769, 772 (*Acosta*); *People v. Jackson* (Feb. 23, 2021, D077095) ___ Cal.App.5th ___ [2021 Cal.App. Lexis 152, *1–2].) In *In re Williams*, the Second District, Division Five, concluded that in extending youth offender parole hearings to adults under age 24 and then to those under age 26, "[t]he legislative history suggests the Legislature was motivated by dual concerns: that lengthy life sentences did not adequately account for, first, the diminished culpability of youth, and second, youthful offenders' greater potential for rehabilitation and maturation." (*In re Williams*, *supra*, at p. 434.) As to the second legislative concern, potential for rehabilitation and maturation, the court was "inclined to agree" that young adult offenders serving LWOP sentences were similarly situated to young adult offenders serving non-LWOP sentences. (*Id.* at p. 435.) As to the first legislative concern, diminished culpability, it reached a different conclusion, stating, "While a 21-year-old *special circumstance* murderer may, in fact, have diminished culpability compared with a 28 year old who commits the same crime, he is nonetheless *more* culpable and has committed a more serious crime than a 21 year old convicted of a *nonspecial circumstance* murder." (*Ibid.*)

Assuming the two groups were nevertheless similarly situated, the court found a rational basis underlying the difference in treatment, explaining, "The Legislature has prescribed an LWOP sentence for only a small number of crimes. These are the crimes the Legislature deems so morally depraved and so injurious as to warrant a sentence that carries no hope of release for the criminal and no threat of recidivism for society. In excluding LWOP inmates from youth offender parole hearings, the Legislature

reasonably could have decided that youthful offenders who have committed such crimes—even with diminished culpability and increased potential for rehabilitation—are nonetheless still sufficiently culpable and sufficiently dangerous to justify lifetime incarceration." (*In re Williams*, *supra*, 57 Cal.App.5th at p. 436.)

In *Acosta*, the Fourth District, Division Three, held that "young adult LWOP offenders are similarly situated to young adult offenders sentenced to life and juvenile offenders sentenced to life or LWOP … for the purpose of section 3051." (*Acosta*, *supra*, 60 Cal.App.5th at p. 778.) Building on *In re Williams*, the *Acosta* court stated,

> "Section 3051's amendments were designed 'to account for neuroscience research that the human brain—especially those portions responsible for judgment and decisionmaking—continues to develop into a person's mid-20s.' (*Edwards*, *supra*, 34 Cal.App.5th at p. 198.) '[T]he purpose of section 3051 is not to measure the extent of punishment warranted by the offense the individual committed but to permit the evaluation of whether, after years of growth in prison, that person has attained the maturity to lead a law-abiding life outside of prison. Both a person sentenced to LWOP for a crime committed while under 18 and a person receiving the same sentence for a crime committed when 18 or slightly older committed their offenses before their character was necessarily "well formed" and when their judgment and decisionmaking were likely to improve. Both are similarly situated for the purpose of evaluating whether they have outgrown the youthful impulses that led to the commission of their offenses.' ([*In re*] *Jones* [(2019)] 42 Cal.App.5th [477,] 485–486 (conc. opn. of Pollak, J.).)

> "'Likewise, a person who committed an offense between 18 and 25 years of age serving a sentence permitting parole and a person who committed an offense at the same age serving an LWOP sentence are similarly situated for the purpose of determining whether they have outgrown the youthful impulses that led to the commission of their offenses.' ([*In re*] *Jones*, *supra*, 42 Cal.App.5th at p. 486 (conc. opn. of Pollak, J.).) As between 'youth offenders sentenced to LWOP and those sentenced to a parole-eligible life terms,' 'one could say that both groups committed their crimes before their prefrontal cortexes reached their full functional capacity, when their characters were not yet fully formed. Both groups are equally likely to demonstrate improved judgment and decisionmaking as they reach emotional and cognitive maturity.' (*In re*

14.

*Williams*[, *supra*,] … 57 Cal.App.5th [at p. ]435 .…)" (*Acosta*, *supra*, 60 Cal.App.5th at p. 779.)

However, as in *In re Williams*, the court determined there was a rational basis for the difference in treatment. (*Acosta*, *supra*, 60 Cal.App.5th at p. 779.) It opined that the extension of section 3051 to include juvenile LWOP offenders was the result of the United States Supreme Court's decision in *Montgomery v. Louisiana* (2016) ___ U.S. ___ [136 S.Ct. 718] (*Montgomery*) and the statutory amendment allowed for compliance "without resorting to costly resentencing hearings." (*Acosta*, *supra*, at p. 779.)[9] Because *Montgomery* did not compel the same treatment of young adult offenders, age, therefore, provides "a constitutionally sufficient basis for distinguishing juvenile LWOP offenders from young adult LWOP offenders." (*Id.* at p. 780.)

With respect to young adult offenders serving LWOP and non-LWOP sentences, the court recognized that "'[t]he Legislature has prescribed an LWOP sentence for only a small number of crimes. These are the crimes the Legislature deems so morally depraved and so injurious as to warrant a sentence that carries no hope of release for the criminal and no threat of recidivism for society.'" (*Acosta*, *supra*, 60 Cal.App.5th at p. 780.) Therefore, "the severity of the crime committed" provides a rational basis for distinguishing between the groups. (*Ibid.*)

In the most recent case, the Fourth District, Division One, assumed that young adult offenders sentenced to LWOP and juvenile offenders sentenced to LWOP are similarly situated for purposes of resolving the defendant's claims but found that "because both the United States Supreme Court and our high court have repeatedly found the bright line drawn between juveniles and nonjuveniles to be a rational one when it

---

**9** In *Montgomery*, the United States Supreme Court held that *Miller* announced a substantive rule of constitutional law and, therefore, applied retroactively, but states could "remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." (*Montgomery*, *supra*, ___ U.S. at p. ___ [136 S.Ct. at p. 736].)

comes to criminal sentencing," the difference in treatment between the two groups based on age withstands scrutiny. (*People v. Jackson*, *supra*, ___ Cal.App.5th at p. ___ [2021 Cal.App. Lexis 152, *9].  As to the treatment of young adult LWOP offenders versus young adult offenders convicted of first degree murder and eligible for parole, the court concluded that because an LWOP sentence is based on the existence of aggravating factors that are absent in non-LWOP first degree murder, the two groups are not similarly situated. (*Id.* at p. ___ [2021 Cal.App. Lexis, *13–16.)  Furthermore, "public safety, and the desire to punish those persons who commit first degree special circumstance murder more harshly than persons who commit first degree murder without aggravating circumstances, provide a plausible basis for our Legislature to treat these two classifications differently for purposes of section 3051." (*Id.* at p. ___ [2021 Cal.App. Lexis, *17.)

### 2.     Exclusion of Young Adult One Strike Offenders under Section 3051, Subdivision (h), Satisfies Rational Basis Review

Turning to the issue before us, the California Supreme Court is poised to resolve the split of authority concerning the exclusion of young adult One Strike offenders from youth offender parole hearing eligibility under section 3051, subdivision (h), while extending eligibility to first degree murderers.  The question presented is a close and difficult one.  However, as a court of intermediate review, we conclude that the Legislature's decision to leave the exclusion in place while otherwise broadening the reach of the statute by age indicates a deliberate policy choice and we cannot say that it has done so without *any* rational basis, at least as to young adult sex offenders, which is the question we confront.[10]

---

[10]     The exclusion of juvenile One Strike offenders presents a more troublesome question given the Legislature's addition of section 3051, subdivision (b)(4), which provides for youth offender parole hearings for juvenile offenders sentenced to LWOP (*Contreras*, *supra*, 4 Cal.5th at pp. 381–382), and we express no view on *Moseley*.

16.

We acknowledge the persuasive value of reasoned California Supreme Court dicta (*People v. Tovar* (2017) 10 Cal.App.5th 750, 759, citing *People v. Rios* (2013) 222 Cal.App.4th 542, 563), and our high court's admonition that "legal doctrine evolves over time, and appellate courts have the capability and the responsibility to recognize and explain such changes when they occur" (*K.R. v. Superior Court* (2017) 3 Cal.5th 295, 308–309). It remains, however, that "'a decision does not stand for a proposition not considered by the court'" (*People v. Delgado* (2017) 2 Cal.5th 544, 590; accord, *Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 217), and *Contreras*, on which *Edwards* relies, was decided on Eighth Amendment grounds as to defendants who were juveniles at the time of their controlling offenses (*Contreras*, *supra*, 4 Cal. 5th at p. 356). The court did not ultimately analyze whether there is a rational basis to exclude either juveniles or young adult offenders sentenced under the One Strike law from youth offender parole hearings under section 3051, although it recognized the defendants' argument "that the current treatment of *juvenile* One Strike offenders is anomalous given that juveniles convicted of special circumstance murder and sentenced to LWOP are now eligible for parole during their 25th year in prison," and observed "that the current penal scheme for *juveniles* may warrant additional legislative attention." (*Contreras*, *supra*, at p. 382, italics added; see § 3051, subd. (b)(4).)[11]

As previously stated, in rejecting recidivism concerns as a rational basis for excluding young adult One Strike offenders from youth offender parole hearings, the *Edwards* court stated that "murderers, too, recidivate," and although it acknowledged the absence of any such requirement, it criticized the People for failing to provide empirical data. (*Edwards*, *supra*, 34 Cal.App.5th at p. 199.) However, the law has long recognized

---

[11]    These distinctions were also recognized in *People v. Jackson*, *supra*, ___ Cal.App.5th at p. ___ [2021 Cal.App. Lexis 152, *10–14].

that sex offenders present a higher risk of recidivism and rational basis review is deferential.

We agree that society holds the sanctity of human life in the highest regard and, therefore, murder represents the most serious of all crimes. (*Contreras*, *supra*, 4 Cal.5th at p. 382, citing *Graham v. Florida*, *supra*, 560 U.S. at p. 69 & *Kennedy v. Louisiana*, *supra*, 554 U.S. at p. 438.) We do not agree that this necessarily fatally undermines recidivism concerns as a rational basis for excluding young adult One Strike sex offenders from section 3051. Courts have repeatedly recognized the existence of uniquely "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is 'frightening and high.'" (*Smith v. Doe* (2003) 538 U.S. 84, 103, quoting *McKune v. Lile* (2002) 536 U.S. 24, 34; accord, *People v. Mosley* (2015) 60 Cal.4th 1044, 1061; *In re Alva* (2004) 33 Cal.4th 254, 289; see *People v. Garcia* (2017) 2 Cal.5th 792, 797 ["Like most jurisdictions, California requires convicted sex offenders to register as a means of enabling law enforcement to manage the serious risk to the public of recidivism."]; *Doe v. State of California* (2017) 8 Cal.App.5th 832, 841 ["Reducing recidivism and protecting the public from sexual predators … are 'public issues or an issue of public interest.'"].)

"It is both the prerogative and the duty of the Legislature to define degrees of culpability and punishment, and to distinguish between crimes in this regard." (*People v. Turnage* (2012) 55 Cal.4th 62, 74; accord, *Johnson*, *supra*, 60 Cal.4th at p. 887; *People v. Wilkinson* (2004) 33 Cal.4th 821, 840.) The One Strike law, effective November 30, 1994, was enacted to "ensure[] serious sexual offenders receive long prison sentences whether or not they have any prior convictions. (Stats. 1993–1994, 1st Ex. Sess., ch. 14, § 1, pp. 8570–8572.) According to a general statement of purpose in the legislative history, the targeted group preys on women and children, cannot be cured of its aberrant impulses, and must be separated from society to prevent reoffense. (Sen. Com. on

18.

Judiciary, Analysis of Sen. Bill No. 26 (1993–1994 1st Ex. Sess.) as introduced Feb. 2, 1994, pp. 9–10.)" (*People v. Wutzke* (2002) 28 Cal.4th 923, 929–930, fn. omitted.) "Almost all of the enumerated crimes involve the use of force or fear" (*id.* at p. 930), and "reflect the use of violent or predatory means that increase the victim's 'vulnerability'" (*ibid.*, quoting *People v. Palmore* (2000) 79 Cal.App.4th 1290, 1296; accord, *People v. Garcia* (2017) 17 Cal.App.5th 211, 223; *People v. Luna* (2012) 209 Cal.App.4th 460, 471).

"A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable" (*Chatman*, *supra*, 4 Cal.5th at p. 289), and "[n]othing compels the state 'to choose between attacking every aspect of a problem or not attacking the problem at all'" (*People v. Barrett* (2012) 54 Cal.4th 1081, 1110). "Far from having to 'solve all related ills at once' [citation], the Legislature has 'broad discretion' to proceed in an incremental and uneven manner without necessarily engaging in arbitrary and unlawful discrimination [citations]." (*Ibid.*)

In *United States v. Kebodeaux*, which involved a challenge to a federal sex offender registration requirement enacted after the respondent had served his sentence for a sex offense, the United States Supreme Court recognized that "[t]here is evidence that recidivism rates among sex offenders are higher than the average for other types of criminals." (*United States v. Kebodeaux* (2013) 570 U.S. 387, 395–396.) In upholding the requirement, the court recognized the existence of conflicting evidence, but pointed out that all that was required of Congress was a rational basis for the conclusion reached. (*Id.* at p. 396.)

In this instance, the Legislature was tasked with balancing the competing policy concerns of public safety and evolution in the law driven by the differences in moral culpability and brain development of youthful offenders 25 years of age and younger versus adult offenders over the age of 25. The One Strike law specifically applies to certain sex offenses where the offender was convicted of a prior sex offense, convicted of

committing a sex offense against multiple victims, or convicted of committing a sex offense in a manner that increased the victim's vulnerability. (§ 667.61, subds. (c)–(e).) In attempting to strike a balance between competing concerns, the Legislature could have chosen to distinguish among groups of serious or violent offenders and exclude those groups it determined present a *heightened* risk of recidivism, including Three Strikes offenders with a demonstrated history of recidivism and One Strike sex offenders, whom it could have concluded present a greater risk of recidivism as a class. This provides a rational basis for the differential treatment between groups of offenders and we may not demand more on review.

We recognize that the One Strike law metes out extremely harsh punishment, and given the evolution in the law regarding the treatment of both juvenile and young adult offenders, the Legislature may wish to revisit the sentencing scheme itself or its inclusion in subdivision (h) of section 3051, particularly in light of its decision to extend youth offender parole hearings beyond juveniles to, at present, young adult offenders who were 25 years old or younger at the time of their crimes. However, "the rational basis standard does not give courts free license to judge the wisdom or desirability of statutes or to act as a super-Legislature" (*Johnson*, *supra*, 60 Cal.4th at pp. 880–881, fn. 5; accord, *Chatman*, *supra*, 4 Cal.5th at p. 289), and "the logic behind a potential justification [does not] need to be persuasive or sensible—rather than simply rational" (*Chatman*, *supra*, at p. 289).

We echo the concerns articulated by Justice Segal in *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1035–1041 (conc. opn. of Segal, J.) (*Montelongo*). The defendant in *Montelongo* was sentenced to LWOP for a special circumstance murder committed when he was 18 years old, and by virtue of his LWOP sentence, he is categorically ineligible for a youth offender parole hearing. (*Id.* at pp. 1020–1021.) Justice Segal highlighted the tension between, one, the Legislature's determination that advances in science concerning brain development of juveniles and young adults into their mid-20's

versus those adults beyond their mid-20's justified the extension of youth offender parole hearings to young adults and, two, its continued exclusion of certain categories of youth offenders based on their sentences, which are necessarily tethered to underlying crimes. (*Id.* at pp. 1035–1041 (conc. opn. of Segal, J.).) Justice Segal pointed out, "[D]espite the Supreme Courts pronouncement in *Miller* that the differences between fully developed and youthful brains are not 'crime-specific,' the Legislature excluded from the benefits of sections 1170 and 3051 young adult offenders who committed certain specific crimes; namely, those crimes subjecting them to life in prison without the possibility of parole." (*Id.* at pp. 1038–1039 (conc. opn. of Segal, J.).) "[W]e are stuck with the line that the United States Supreme Court drew at 18 years old in *Roper* in 2005 and that the Legislature imported into section 3051. (See *Roper* [*v. Simmons* (2005)] 543 U.S. [551,] 574; § 3051, subd. (b)(4); maj. opn., *ante*, at pp. 1031–1032].) Whether and where the Legislature should draw a new line in section 3051 is not for us to say, but it may be time for the Legislature to rethink the old *Roper* line." (*Id.* at p. 1041, fn. omitted (conc. opn. of Segal, J.).)

In a concurring statement following denial of review, Justice Liu agreed with Justice Segal and stated, "[T]here is a colorable claim that section 3051's exclusion of certain juvenile offenders based on their controlling offense 'violates principles of equal protection and the Eighth Amendment' or 'constitutes "unusual punishment" within the meaning of article I, section 17 of the California Constitution.' (*Contreras*, *supra*, 4 Cal.5th at p. 382; see … *Williams*[, *supra*,] 47 Cal.App.5th [at p. 493], review granted …; … *Edwards*[, *supra*,] 34 Cal.App.5th [at pp. ]197, 199 ['section 3051's carve-out for One Strike defendants violates principles of equal protection' and is 'unconstitutional on its face'].) Because there is a substantial question whether section 3051's exclusion of 18- to 25-year-olds sentenced to life without parole violates equal protection, 'there is good reason for legislative reconsideration' of the statute. (*In re Jones*[, *supra*,] 42 Cal.App.5th [at pp. 486–487] (conc. opn. of Pollak, J.).)" (*Montelongo*, *supra*, 55

21.

Cal.App.5th at pp. \_\_\_, review denied Jan. 27, 2021, S265597 [2021 Cal. Lexis 620, \*5–6] (conc. stmt. of Liu, J.).)

Thus, we are cognizant of the tensions that presently exist.[12] However, rational basis review "sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny. Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair." (*Chatman*, *supra*, 4 Cal.5th at p. 289.) At present, certain classes of young adult offenders, including those sentenced under the Three Strikes law, the One Strike law or to LWOP, do not qualify for youth offender parole hearings. As previously stated, our Legislature has repeatedly expressed concern that sex offenders present a heightened risk of recidivism and the One Strike law targets sex offenders with prior convictions or multiple victims, or those who committed their sex crimes in circumstances "that increase the victim's 'vulnerability.'" (*People v. Wutzke*, *supra*, 28 Cal.4th at p. 930.) Under these circumstances, we cannot say that there is *no* rational basis for the exclusion of young adult One Strike offenders from youth offender parole hearings, and, in the absence of a contrary view articulated by our high court, we conclude that resolution of the growing tension in the law lies with the Legislature in the first instance. We again acknowledge the question is a difficult one, but we conclude we are constrained to reject defendant's facial challenge to section 3051, subdivision (h), based on his exclusion, as a young adult One Strike offender, from youth offender parole hearings.

---

[12] The *Acosta* court also spoke to these tensions, stating, "We do have some reservations about our analysis." (*Acosta*, *supra*, 60 Cal.App.5th at p. 780.) "In the end, however, we cannot insert our own policy concerns into the analysis." (*Id.* at p. 781.) The court invited the Legislature to reconsider these issues, as do we. (*Ibid.*)

**II. Entitlement to Relief from Simple Kidnapping Finding Given Aggravated Kidnapping Finding**

Next, defendant argues that the jury's finding of simple kidnapping under section 667.61, subdivision (e)(1), as the "lesser" enhancement, should be vacated given its finding of the greater aggravated kidnapping under section 667.61, subdivision (d)(2). The People point out that the One Strike law is an alternate sentencing scheme, but contend that, in any event, there is no obligation to strike an enhancement on the ground that it is a lesser included enhancement. We agree with the People that defendant's claim lacks merit.

Section 667.61 is an alternate sentencing scheme, as the People assert, and the jury's findings under subdivisions (d) and (e) of the statute are penalty allegations that determine the sentence mandated under the scheme. (*People v. Anderson* (2009) 47 Cal.4th 92, 102 & 119; accord, *People v. Acosta* (2002) 29 Cal.4th 105, 118–119, 120 & fn. 7; *People v. Betts* (2020) 55 Cal.App.5th 294, 299–300.) In this instance, the jury's finding under section 667.61, subdivision (d)(2), informs the sentence on counts 2 and 3, and its finding under section 667.61, subdivision (e)(1), informs the sentence on count 1. (*People v. Betts*, *supra*, at p. 300.)

Defendant concedes he is unaware of any authority for the proposition that he is entitled to have a "lesser" penalty allegation stricken (see *People v. Robinson* (2016) 63 Cal.4th 200, 213, fn. 7 ["The lesser included offense doctrine applies in three areas: (1) jury instructions …; (2) sentence modification under section 1181, subdivision 6 …; and (3) multiple convictions, which may not be based on necessarily included offenses [citation]."]), and his assertion that the penalty allegation findings are analogous to greater and lesser offenses, entitling him to relief from the lesser finding of simple kidnapping, is otherwise undeveloped (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties."]). "On appeal, we presume that a judgment or order

of the trial court is correct, "'[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'"" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Defendant has not shown an error relating to the jury's penalty allegation findings and accordingly, we reject his challenge.

## III. Imposition of Parole Revocation Restitution Fine

Finally, the trial court imposed a restitution fine in the amount of $300 and a corresponding parole revocation restitution fine in the amount of $300, suspended. (§§ 1202.4, subd. (b), 1202.45, subd. (a).) The parties agree that the parole revocation restitution fine imposed by the trial court should be stricken because defendant was sentenced to two LWOP terms and a term of 25 years to life.

Section 1202.45, subdivision (a), provides: "In every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4." As the parties contend, defendant's sentence in this case does not include a determinate term under section 1170 and, therefore, the trial court erred in imposing a parole revocation restitution fine. (*People v. Brasure* (2008) 42 Cal.4th 1037, 1075; *People v. Jenkins* (2006) 140 Cal.App.4th 805, 819; *People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1183.) The $300 parole revocation restitution fine shall be stricken.

## DISPOSITION

The parole revocation restitution fine imposed under section 1202.45, subdivision (a), is stricken, and the trial court shall issue and forward an amended abstract of judgment to the appropriate authorities.  Except as modified, the judgment is affirmed.

MEEHAN, J.

I CONCUR:


DeSANTOS, J.

POOCHIGIAN, Acting P.J., Concurring.

I concur with the majority opinion as to the disposition.

I write separately to respectfully state that I do not adopt the views expressed in the majority opinion characterizing the severity of the punishment or embrace the concurring opinion in *People v. Montelongo* (2020) 55 Cal.App.5th 1016.  Dicta contained in a concurring opinion, as well as a dissent, do not state the majority view and are not binding.  (*People v. Lopez* (2012) 55 Cal.4th 569, 585; *Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, 211.)  I see no reason to expound upon these particular views but otherwise agree with the majority opinion.


POOCHIGIAN, Acting P.J.